**The below described is SIGNED.**

**Dated: December 09, 2005**

**JUDITH A. BOULDEN
U.S. Bankruptcy Judge**



___

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re:<br><br>XOKPRAKHONG<br>MANCHANTHASOUK,<br><br>　　　　　　Debtor. | Bankruptcy Number: 05-20841<br><br>Chapter 7 |
| TROY STAKER, and KERRY STAKER,<br><br>　　　　　　Plaintiffs,<br><br>vs.<br><br>XOKPRAKHONG<br>MANCHANTHASOUK,<br><br>　　　　　　Defendant. | Adversary Proceeding No. 05-2044<br><br>Judge Judith A. Boulden |

### MEMORANDUM DECISION

Before the Court is Troy and Kerry Stakers' (Stakers) Motion for Summary Judgment

(Motion) seeking a determination of whether debts owed to them by Xokprakhong

Manchanthasouk (Debtor), the debtor in this chapter 7 case, are nondischargeable under 11 U.S.

C. §§ 523(a)(2)(A), (a)(4) and (a)(6).[1] The Motion, Memorandum in Support, and Notice of Hearing have been timely served on the Debtor's attorney. No responsive pleadings have been filed. The Debtor's attorney filed a Motion to Withdraw As Counsel. The hearing on the Motion to Withdraw As Counsel was continued without date, and the Debtor's attorney failed to appear at the hearing on the summary judgment motion. The Court has considered the matters properly before it and the arguments presented, and has conducted an independent review of applicable law. Based thereon, the Court makes the following ruling.

## I. JURISDICTION AND LEGAL STANDARD

This is a core proceeding under 28 U.S.C. § 157(b)(2)(I), and the Court may enter a final order. Federal Rule of Bankruptcy Procedure 7056 makes summary judgment appropriate when, after consideration of the record, the Court determines that "there is no issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[2] In applying this standard, the Court examines the factual record in the light most favorable to the nonmoving party.[3] There is no genuine issue of fact "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party."[4] The moving party has the burden of establishing that it is entitled to summary judgment.[5]

---

[1] Future references are to title 11 of the United States Code unless otherwise noted.

[2] Fed. R. Bankr. P. 7056(c).

[3] *See Wolf v. Prudential Ins. Co. of Am.*, 50 F.3d 793, 796 (10th Cir. 1995).

[4] *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[5] *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986).

## II. UNDISPUTED FACTS

The Debtor has not responded to the statement of undisputed facts filed by the Stakers. The only response from the Debtor are the denials made in the Debtor's answer. As such, the Court accepts the facts as stated in the Stakers' memorandum in support and in the Stakers' affidavits as undisputed. Further, the Stakers sent various requests for admissions to the Debtor under Fed. R. Bankr. P. 7036. There is no service list attached to these requests: however, the Stakers did file a Notice of Service of Plaintiffs' First Set of Discovery with the Court on February 28, 2005. The notice indicates that the Debtor's attorney was served with a copy of the discovery requests. Because the Debtor has failed to respond to the request for admissions, all requested admissions are deemed admitted.

On April 13, 2004, the Stakers showed a rental home located at 4146 W. Wendy Ave., West Valley City, Utah (rental home), which they own, to the Debtor and Mr. John Evans (Evans). At that meeting, the Debtor and Evans represented to the Stakers that they were a married couple interested in renting the home for themselves and their children. But the Debtor admitted later in her answer that she was actually married to another man, Wilto Joosten. Evans filled out a rental application listing the applicants as "John and Xokpra Evans," and on April 27, 2004, the Stakers, Evans, and the Debtor executed a Real Estate Lease (lease agreement) obligating the Debtor and Evans to make bi-monthly payments of $480 for a total monthly rental obligation of $960 per month. The length of the lease was one year. The Debtor signed the lease agreement using the name "Xokprakhong Evans." This was not the Debtor's legal name. The Stakers relied on the representations that the Debtor and Evans were married when entering into the lease agreement. Had the Stakers known that the Debtor was married to another man, they

would not have entered into the lease agreement because they believe that such relationships are often unstable and volatile. The rental home had recently been painted and was in good condition when the Debtor and Evans moved in.

The Debtor and Evans became delinquent for a portion of their September 2004 rent. On October 5, 2004 the Stakers spoke to the Debtor about the delinquency. At that time, the Debtor told the Stakers that her husband, Evans, had left and that she had nowhere else to take her children to live. Relying on this representation, the Stakers agreed to work with the Debtor so that she could continue to occupy the rental home. In truth, the Debtor was still married to Wilto Joosten who lived in Salt Lake County. On October 15, 2004, the Stakers spoke to the Debtor again. During the conversation, the Debtor indicated that she and Evans had reconciled and that they would be able to become current on their rental obligation. A few days later, the Stakers arrived at the rental home to make some repairs and found it abandoned. The rental home was cluttered with food and the Debtor's personal items, the downstairs shower was damaged, the carpets were filthy, and there were holes in the walls. It appeared to the Stakers that this damage had been done deliberately and for the purpose of damaging the Stakers' property. The Stakers incurred significant expenses in repairing the rental home, but have only asked the Court to award them the following expenses which they claim arose from the Debtor's willful and malicious acts: $150 for commercial carpet cleaning; $39.43 to replace locks; $49.95 to replace the garage door opener; and $15 for materials to repair the walls.[6] The rental home was placed

---

[6] In the complaint, the Stakers prayed for $287.64 in damages under § 523(a)(6). The amount requested in the motion for summary judgment is $285.62. The testimony presented at the trial establishes that the total amount of damages under § 523(a)(6) is $254.38.

on the market on or about November 15, 2004 but it took the Stakers until the end of December the re-let the rental home at $5 less per month.

### III. DISCUSSION

There are no disputed material facts and the only determination to be made is whether the Stakers are entitled to judgment as a matter of law on their causes of action for nondischargeability. The Stakers have asked for summary judgment under §§ 523(a)(2)(A), (a)(4), and (a)(6). The Court will address each cause of action.

#### A. Section 523(a)(2)(A)

A debt is nondischargeable under § 523(a)(2)(A) if the debtor obtained money by "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition."[7] The elements necessary to prove a claim for relief are found in the general common law of torts as understood in 1978 when § 523(a)(2)(A) was enacted.[8] The Restatement (Second) of Torts (1976) (Restatement) defines "misrepresentation" as:

> One who fraudulently makes a misrepresentation of fact, opinion, intention or law for the purpose of inducing another to act or to refrain from action in reliance upon it, is subject to liability to the other in deceit for pecuniary loss caused to him by his justifiable reliance upon the misrepresentation.[9]

Prior Tenth Circuit law required the following elements to be satisfied under § 523(a)(2)(A):

(1) the debtor made a false representation;
(2) the debtor made the representation with the intent to deceive the creditor;
(3) the creditor relied on the representation;

---

[7] § 523(a)(2)(A).

[8] *Field v. Mans*, 516 U.S. 59 (1995). In *Field*, the Court looked to the treatment of "misrepresentation" in the RESTATEMENT (SECOND) OF TORTS (1976), published shortly before Congress enacted the Bankruptcy Code. *Id.* at 70-72.

[9] RESTATEMENT at § 525.

>(4) the creditor's reliance was reasonable; and
>(5) the debtor's representation caused the creditor to sustain a loss.[10]

This test has been expressly modified inasmuch as "justifiable" not "reasonable" reliance must be shown. In addition, although the Tenth Circuit's stated test does not differ dramatically from the definition of misrepresentation stated under Restatement § 525, it is more accurate to rely on Restatement § 525 rather than this five-point test.[11]

The threshold inquiry under § 523(a)(2)(A) is whether the debtor obtained money, property, or services. The Debtor and Evans, at the time they executed the lease agreement, did obtain the use of the rental home. This use was again extended to the Debtor on October 5, 2004 when she spoke to the Stakers about remaining in the rental home even though she and Evans were delinquent. These undisputed facts establish the threshold inquiry.

The first element under § 523(a)(2)(A) is whether the Debtor made a false representation. The Stakers allege that the Debtor and Evans made the representation they were married when Evans filled out the application, and later when they executed the lease agreement which contains the Debtor's signature stating that her name is "Xokprakhong Evans." The Debtor has admitted in her answer that she was not married to Evans when the application was submitted. The Debtor has also admitted that she was married to Wilto Joosten on the date Evans and the Debtor executed the lease agreement. The record shows that the Debtor did misrepresent her marital status at the time Evans filled out the loan application, at the time the

---

[10] *Fowler Bros. v. Young (In re Young)*, 91 F.3d 1367, 1373 (10th Cir. 1996).

[11] *Skull Valley Bank of Goshute Indians, v. Chivers (In re Chivers)*, 275 B.R. 606, 619 (Bankr. D. Utah 2002) (stating the test set forth in the Restatement, and reconciling it with *Young*). *See also Lang v. Lang (In re Lang)*, 293 B.R. 501, 514 (10th Cir. BAP 2003) (discussing *Young* as modified by *Field*).

lease agreement was executed, and on October 5, 2004 when the Debtor told the Stakers that Evans had left and asked them to allow her to stay in the rental home even though she and Evans were delinquent on their rental payments.

Intent, the second element under § 523(a)(2)(A), can be inferred from the totality of the circumstances. The Debtor's behavior and comments during the rental process, the use of the name "Xokprakhong Evans" on the lease agreement, and the statement that her husband had left her on October 5, 2004 are all indicia of the ruse perpetrated on the Stakers to induce them to rent to the Debtor and Evans. The Debtor wanted the Stakers to believe that she was married to Evans when in fact she was not.

The third element is whether the Stakers justifiably relied on the false representation. Reliance upon a fraudulent misrepresentation is justifiable if the misrepresentation was material. A misrepresentation is material if:

> (a) a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question; or (b) the maker of the representation knows or has reason to know that its recipient regards or is likely to regard the matter as important in determining his choice of action, although a reasonable man would not so regard it.[12]

It was important for the Stakers to know the actual marital status of their tenants. Troy Staker stated that had he known that the Debtor was actually married to another man while pretending to be Evans' wife, he would not have rented the rental home to her because such relationships are unstable and potentially volatile. Troy Staker only allowed the Debtor to remain in the rental home after October 5, 2004 because he believed the Debtor had nowhere else to go. Had he been aware that the Debtor was actually married to another man with a another home to which

---

[12] RESTATEMENT at § 538.

the Debtor and her children could have moved, he may not have allowed the Debtor to remain in the rental home. The marital status of the Debtor was material to the Stakers' decisions, and their reliance on the Debtor's misrepresentations was justifiable.

The final element is whether the Stakers suffered damages due to their reliance on the misrepresentation. The Stakers allege damages of $1,125 for past-due rent and $1,480[13] for prospective rent due under the lease agreement for total fraud damages of $2,605. The Stakers have provided sufficient evidence to establish this element.

The undisputed facts demonstrate that the Stakers justifiably relied to their detriment on the Debtor's misrepresentations. The Court finds that the debt for past-due and prospective rent is nondischargeable under § 523(a)(2)(A).

**B.    Section 523(a)(4)**

Section 523(a)(4) provides that a chapter 7 debtor does not receive a discharge for debt resulting from "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny."[14] The Stakers have not alleged sufficient facts establishing embezzlement or larceny. Further, there is no evidence before the Court that any type of fiduciary relationship existed between these two parties, or that a statutory or express trust existed. The Stakers have no claim under § 523(a)(4).

---

[13]    The Stakers have offset the total amount with a $500 security deposit.

[14]    § 523(a)(4).

### C. Section § 523(a)(6)

Section 523(a)(6) provides that a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity" will not be discharged.[15] The Supreme Court clarified that the language of § 523(a)(6) is reserved for *intentional acts* which inflict *intended injury*, not reckless or negligent behavior which results in injury or intentional acts which result in unintended injury. "The word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury."[16] To determine whether the injury is a result of intentional, reckless, or negligent behavior, the Supreme Court directs parties to the Restatement of Torts stating "[i]ntentional torts generally require that the actor intend 'the *consequences of an act*,' *not simply 'the act itself*.'"[17] As this Court has explained in a prior ruling on this topic, "[i]n order for an act to be willful and malicious it must be a deliberate or intentional injury (willful) that is performed without justification or excuse (malicious)."[18]

Accordingly, the Stakers must establish two specific elements under § 523(a)(6): (1) that the Debtor's conduct was willful or done with a deliberate intent to injure; and (2) that her conduct was malicious or done without justifiable excuse.[19] The Stakers have alleged that the

---

[15] § 523(a)(6).

[16] *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998) (holding that debts arising for reckless or negligent injuries do not fall within the § 523(a)(6) exception to discharge) (emphasis in original).

[17] *Id.* at 61-62 (citing RESTATEMENT (SECOND) OF TORTS § 8A, cmt. a (1964)) (emphasis added in *Geiger*).

[18] *Amer. First Credit Union v. Gagle (In re Gagle)*, 230 B.R. 174, 181 (Bankr. D. Utah 1999).

[19] *McCain Foods USA Inc. v. Shore (In re Shore)*, 317 B.R. 536, 542 (10th Cir. BAP 2004).

Debtor willfully and maliciously caused damage to the rental home resulting in total damages of $285.62. In her answer, the Debtor merely states that she has insufficient knowledge of these allegations. Request for Admission 47 (which is deemed admitted) states that the "hole between the furnace room and basement bedroom arose from the willful and deliberate destruction of the property of the [Stakers]." Troy Staker's affidavit states, "[t]he food and ice cream looked like it was thrown there deliberately,"[20] and "[t]he hole [in the wall] was fist size and looked like it was intentionally punched there."[21] The only evidence before the Court is that the damage done to the rental property was done with a specific intent to damage the rental home, and the damage was done without any justifiable excuse. The undisputed facts are sufficient for the Court to find that the expenses incurred to repair the damage to the rental home are nondischargeable under §523(a)(6).

## IV. CONCLUSION

The Stakers have come forward with sufficient undisputed facts to establish that the Debtor obtained property through fraudulently misrepresented her marital status to the Stakers, and that the Stakers justifiably relied on this misrepresentation to their detriment. The Court finds that the debt owed to the Stakers for past due and prospective rent is nondischargeable under § 523(a)(2)(A) and grants summary judgment in the Stakers' favor on the first and third causes of action. The Stakers have also established that the Debtor acted willfully and maliciously when she caused damage to the rental property, and the Court finds that those damages are

---

[20] Troy Staker's Affid., ¶ 19.

[21] *Id.*, at ¶ 20.

nondischargeable under § 523(a)(6) and grants summary judgment in the Stakers' favor on the fifth cause of action. The Stakers have failed to come forward with sufficient undisputed facts to support a finding of nondischargeability under § 523(a)(4), and the Court denies those portions of the motion. A separate judgment will be issued.

----------------------------------------END OF DOCUMENT -----------------------------------



_____ooo0ooo_____

## SERVICE LIST

Service of the foregoing **MEMORANDUM DECISION** will be effected through the

Bankruptcy Noticing Center to each party listed below.

Troy Staker
Kerry Staker
4259 W Stane Ave
West Valley City, UT 84120
    Plaintiffs

Jeanmarie A. Stinson
455 East 400 South
Suite 40
Salt Lake City, UT 84111
    Attorney for Debtor/Defendant

Xokprakhong Manchanthasouk
580 West 5900 South Apt. 3
Salt Lake City, UT 84123
    Debtor/Defendant

United States Trustee
#9 Exchange Place
Suite 100
Salt Lake City, UT 84111-2147